# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| STEVEN L. BRUDERER, | REPORT AND RECOMMENDATION |
| Plaintiff, | |
| v. | |
| BRIAN DAVIS, State of Utah Dept. of Public Safety Criminal Investigations Officer; ALEX GARCIA, P.O.S.T Investigative Division Officer; CITY OF SOUTH SALT LAKE, a public corporation; CHERIE WOOD, City of South Salt Lake Mayor; JACK CARRUTH, South Salt Lake Police Dept. Chief; MICHAEL MCNAUGHTON, South Salt Lake Police Dept. Lieutenant; BRANDON SINGLETON, South Salt Lake Police Dept. Sergeant; and LOGAN BREEZE, South Salt Lake Police Dept. Officer, | Case No. 1:20-cv-00035-HCN-JCB |
| | District Judge Howard C. Nielson, Jr. |
| Defendants. | Magistrate Judge Jared C. Bennett |

Before the court is Plaintiff Steven L. Bruderer's ("Mr. Bruderer") complaint alleging civil rights violations, which the court reviews for sufficiency under 28 U.S.C. § 1915 ("IFP Statute").[1] Based upon the analysis set forth below, the court recommends dismissing all of Mr. Bruderer's claims except the Fourth Amendment claims against three members of the South Salt

---

[1] Mr. Bruderer has been permitted to proceed in forma pauperis under the IFP Statute.

Lake Police Department, Brandon Singleton ("Officer Singleton"), Logan Breeze ("Officer Breeze") (collectively, "Officers"), and Michael McNaughton ("Lieutenant McNaughton").

## FACTUAL BACKGROUND

The court accepts all factual allegations as true for purposes of its review of Mr. Bruderer's complaint. Mr. Bruderer alleges that he was driving on September 27, 2017, when he saw several police officers and patrol cars positioned outside the Motel 6 located at 3330 South 300 West in Salt Lake County, Utah. Mr. Bruderer parked his car near the Motel 6 to watch "what appeared to be an investigation and/or operation of sorts."[2] He "did this to observe what seemed to be odd, 'maybe even suspicious,' behavior for police officers' normal functions."[3] Mr. Bruderer "parked in an adjacent parking lot to prevent any interference on his part with their investigation and/or operation."[4]

Officer Breeze eventually approached Mr. Bruderer's vehicle and knocked on the passenger-side window. Officer Singleton then joined Officer Breeze and stood outside the driver-side door. Mr. Bruderer rolled down his passenger-side window and asked Officer Breeze if he was being detained. Officer Breeze answered "Yes" and asked Mr. Bruderer for his identification. The Officers told him that his "behavior of watching the police [was] suspicious."[5] Mr. Bruderer asked the Officers why he was being detained, and the Officers

---

[2] ECF No. 3 at 48. The complaint includes two statements of facts: the overview, *id*. at 4-7, and the bill of particulars *id*. at 47-60. The facts vary slightly between the two; however, the variance does not materially affect the court's analysis herein or its recommendation.

[3] *Id*. at 47.

[4] *Id*. at 48.

[5] *Id*. at 4.

repeated that Mr. Bruderer was acting "suspicious."[6] Mr. Bruderer used his cell phone to recite to the Officers the reasonable suspicion standard required to conduct an investigatory stop.

The Officers again asked Mr. Bruderer for his identification documents. "With the two armed officers at the sides of his vehicle, [he] decided it best to provide identification documents to prevent the incident from escalating."[7] Mr. Bruderer provided the Officers his driver license, vehicle registration, and insurance documents. The Officers contacted dispatch to investigate a suspicious vehicle. The Officers ran Mr. Bruderer's information through state databases to ascertain whether he had outstanding warrants and to confirm that the vehicle was registered in his name. The Officers then responded to dispatch's question regarding a hit-and-run incident.

Officer Singleton returned the documents to Mr. Bruderer and explained to him "that the area was known for high drug trafficking."[8] Officer Breeze then told Mr. Bruderer that a business owner complained about him being parked in the lot and that Mr. Bruderer needed to leave. Mr. Bruderer then drove across the street and parked in another business parking lot to continue his observation of the police. The gathering of police disbanded a few minutes later.

After the September 27, 2017 encounter, Mr. Bruderer contacted the South Salt Lake Police Department and requested that the department investigate the incident. Lieutenant McNaughton communicated with Mr. Bruderer about his concerns. Upon review, Lieutenant McNaughton informed Mr. Bruderer that, after "talk[ing] to the officers about the incident and

---

[6] *Id*.

[7] *Id*. at 5.

[8] *Id*. at 52.

review[ing] the bodycam footage," no misconduct had occurred.[9] Mr. Bruderer made several attempts to speak to South Salt Lake Police Department Chief Jack Carruth ("Police Chief Carruth") directly but was unable to do so. "The lack of response from [Police Chief] Carruth was received by [Mr. Bruderer] as a communication from the [South Salt Lake Police Department] in which the department's officers' training, in regards to civil liberties and constitutional rights, was expressed as being lacking."[10] Mr. Bruderer "identified this as a possible problem throughout the entire [South Salt Lake Police Department] due to it not being acknowledged" and that "issues needing to be addressed may be department wide."[11]

      Mr. Bruderer then contacted the Utah Department of Public Safety's Division of Peace Officer Standard Training ("POST") to encourage POST to investigate the "misconduct, unethical behavior, and unlawful actions" that had transpired.[12] He also sent his messages to the City Attorney for South Salt Lake and the Mayor of South Salt Lake, Cherie Wood ("Mayor Wood"). Two Department of Public Safety employees, Alex Garcia ("Mr. Garcia") and Brian Davis ("Mr. Davis"), communicated with Mr. Bruderer about the POST investigation, which concluded further investigation was unnecessary.[13]

---

[9] *Id.* at 54.

[10] *Id.* at 56.

[11] *Id.*

[12] *Id.*

[13] Although it is unclear from Mr. Bruderer's allegations what the exact finding of the POST investigation was, it is clear that Mr. Garcia "closed the complaint" after "communicat[ing] the conclusion of [the] investigation to [Mr. Bruderer]." *Id.* at 57.

Mr. Bruderer next filed a request under the Government Records Access and Management Act ("GRAMA") for all records relating to the September 27, 2017 police encounter. In response, he received a letter informing him that: "After a diligent search, there are no Electronic Communications, Video, or Photo[s] related to this case."[14] Mr. Bruderer undertook a thorough investigation regarding preservation of the body-cam footage from the September 27, 2017 police encounter, which led him to return to the South Salt Lake Police Department to speak to Lieutenant McNaughton about the deleted footage. During this conversation, Mr. Bruderer "discovered that it was [Lieutenant] McNaughton's responsibility to store the body-cam footage and that he was also the person who deleted the footage."[15] Mr. Bruderer now brings this lawsuit against the above-named Defendants for violations of various federal and state laws.

## LEGAL STANDARDS

On receipt of an IFP application, a magistrate judge may review the complaint and recommend that the action be dismissed pursuant to 28 U.S.C. § 1915(e). DUCivR 3-2(b). Section 1915(e) provides that the court is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In determining whether a complaint fails to state a claim for relief under the IFP Statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). Under that standard, the court "look[s] for plausibility in th[e] complaint." *Id*. at

---

[14] *Id*. at 59.

[15] *Id*. at 60.

1218 (second alteration in original) (quotations and citations omitted). More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (second and third alterations in original) (other quotations and citation omitted).

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis. *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* At the very least, Rule 8 requires that the allegations of a complaint put the defendant fairly on notice of the claims against him. *Twombly*, 550 U.S. at 555. The twin purposes of a complaint are to give fair notice of the claims against the opposing party in order to prepare a response and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *Monument Builders of Greater Kan. City, Inc. v. American Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989).

In analyzing Mr. Bruderer's complaint, the court is mindful that he is proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent

standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," *id.* at 1110, and the court will neither "supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam). Indeed, as the Court of Appeals for the Tenth Circuit stated:

> The broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Bellmon*, 935 F.2d at 1110 (citations omitted). After reviewing a pro se plaintiff's complaint under the IFP Statute, the court may dismiss the complaint for failure to state a claim "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay,* 500 F.3d at 1217 (quotations and citation omitted).

## **ANALYSIS**

Mr. Bruderer initiated this pro se civil rights action against the following eight Defendants: (1) Mr. Davis, (2) Mr. Garcia, (3) the City of South Salt Lake, (4) Mayor Wood, (5) Police Chief Carruth, (6) Lieutenant McNaughton, (7) Officer Singleton, and (8) Officer Breeze (collectively, "Defendants"). Mr. Bruderer alleges all seventeen causes of action against

Defendants either individually or in some combination. Below, the court addresses all seventeen of Mr. Bruderer's claims against Defendants, in the following categories: (I) non-cognizable claims for which there is no civil action available (i.e., 18 U.S.C. §§ 241-42; 34 U.S.C. § 12601; and state criminal law claims); (II) claims that fail to satisfy minimal pleading requirements; (III) claims that fail to state a claim for relief (i.e., Driver's Privacy Protection Act, Civil Conspiracy, and Civil Rights Act of 1866); and (IV) claims under 42 U.S.C. § 1983. As shown, all of Mr. Bruderer's claims should be dismissed with prejudice except for the Fourth Amendment claims against Officer Singleton, Officer Breeze, and Lieutenant McNaughton.

## I.       Non-Cognizable Claims

### A.       18 U.S.C. §§ 241-42

Mr. Bruderer brings claims for monetary relief under two federal criminal statutes: (1) Conspiracy Against Rights, 18 U.S.C. § 241; and (2) Deprivation of Rights Under Color of Law, 18 U.S.C. § 242. These statutes establish criminal liability for the deprivation of, and the conspiracy to deprive, certain constitutional and civil rights; however, these statutes do not give rise to a private right of action. *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (stating that criminal statute 18 U.S.C. § 241 is unenforceable through a civil action because it does not provide for a private right of action); *Henry v. Albuquerque Police Dep't*, 49 F. App'x 272, 273 (10th Cir. 2002) (holding that 18 U.S.C. §§ 241 and 242 do not provide for a private civil cause of action); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. § 1983) . . . ."). Because sections 241 and 242 do not provide a civil remedy, Mr. Bruderer's claims under those statutes should be dismissed with prejudice.

### B.     34 U.S.C. § 12601

Mr. Bruderer's claim under 34 U.S.C. § 12601[16] likewise fails for the same reason. This statute applies to conduct by law enforcement officers or by employees of governmental agencies "with responsibility for the administration of juvenile justice or the incarceration of juveniles" and does not create a private cause of action. 34 U.S.C. § 12601(a). It specifically provides that a civil action under this section may be brought only by the Attorney General. *Id.* § 12601(b) (providing that "[w]henever the [A]ttorney General has reasonable cause to believe that a violation . . . has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice"); *see, e.g.*, *Davis v. Clearlake Police Dep't*, No. C-07-03365-EDL, 2008 WL 4104344, at *9 (N.D. Cal. Sept. 3, 2008) (concluding that summary judgment was proper on the plaintiffs' claims under 42 U.S.C. § 14141 because there is no private right of action under that statute); *Miller v. Carpinello*, No. 06-CV-12940, 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007) (dismissing the plaintiff's claims under 42 U.S.C. § 14141 because it does not provide for a private right of action). Not only is Mr. Bruderer not the United States Attorney General, but the complaint is also devoid of any allegations involving juveniles, much less the administration of juvenile justice or the incarceration of juveniles. For these reasons, Mr. Bruderer's claims under 34 U.S.C. § 12601 fail and should be dismissed with prejudice.

### C.     State Criminal Statutes

Mr. Bruderer's reliance on certain state criminal statutes—namely, Utah Code Ann. §§ 76-4-201, 76-5-304, 76-8-201, 76-8-306, 76-8-510.5, 76-6-504, 76-10-1603, and

---

[16] 34 U.S.C. § 12601 formerly codified at 42 U.S.C. § 14141.

76-10-1604—is misplaced. These statutes, which are in the Utah Criminal Code, provide criminal penalties for violations of the cited statutes and cannot be enforced in a private civil action. *Youren v. Tintic Sch. Dist.*, 2004 UT App 33, ¶ 4, 86 P.3d 771 (Utah Ct. App. 2004) ("When a statute makes certain acts unlawful and provides criminal penalties for such acts, but does not specifically provide for a right of action, we generally will not create such a private right of action." (citing cases)). Accordingly, Mr. Bruderer's state law claims are not cognizable and should be dismissed.

## II. Failure to Satisfy Minimum Pleading Requirements

Mr. Bruderer's claim for violation of "Privacy Protection" fails because it is conclusory in nature and vaguely pleaded.[17] Mr. Bruderer alleges that claim by including it within a string of other potential violations. It is unclear from the complaint which specific facts Mr. Bruderer invokes to support the claim. Thus, the court concludes that the claim fails because it does not satisfy the basic pleading requirements of Fed. R. Civ. P. 8(a)(2), which requires dismissal.

## III. Failure to State Claims Upon Which Relief Can Be Granted

### A. Driver's Privacy Protection Act

Mr. Bruderer claims that Officer Breeze and Officer Singleton violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, by using his license plate number and his driver license number to obtain his personal information through the Driver License Division and the Department of Motor Vehicles.[18] Mr. Bruderer's motor vehicle record is protected from disclosure by the DPPA. The DPPA provides redress for violation of a person's protected

---

[17] ECF No. 3 at 15. In support of this claim, Mr. Bruderer cites to 42 U.S.C. § 2000, which is a nonexistent statute.

[18] ECF No. 3 at 50-51.

interest in the privacy of their motor vehicle records and the identifying information therein. *State of Okla. ex rel. Okla. Dep't of Pub. Safety v. United States*, 161 F.3d 1266, 1268 (10th Cir. 1998). The DPPA, however, expressly provides that information contained in a person's record may be disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions." 18 U.S.C. § 2721(b)(1).

Here, Mr. Bruderer describes Officer Singleton and Officer Breeze as engaging in their law enforcement duties when the motor vehicle records search occurred. Mr. Bruderer alleges neither that the Officers' actions occurred outside of their law enforcement capacities nor that their actions were unrelated to the September 27, 2017 police encounter. *See, e.g.*, *Wootten v. Virginia*, No. 6:14-cv-00013, 2015 WL 1345276, at *15 n.11 (W.D. Va. Mar. 23, 2015) ("A plaintiff bears the burden of showing that the obtainment, disclosure, or use of personal information from her motor vehicle records was not for a purpose enumerated in [18 U.S.C. § 2721]."). Accordingly, Mr. Bruderer has not alleged sufficient facts to show that the Officers' search of his motor vehicle information was impermissible or improper under the DPPA and, therefore, the claims should be dismissed with prejudice for failure to state a claim.

    **B.**    **Civil Conspiracy**

Mr. Bruderer makes a passing reference to the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1962(a)-(d). To state a civil RICO claim, a plaintiff must allege: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (quotations and citations omitted). A "pattern of racketeering activity" requires "at least two acts" of conduct indictable under various enumerated federal criminal statutes. 18 U.S.C. § 1961(1), (5). A review of the complaint reveals

that Mr. Bruderer has not alleged *any* facts from which one could infer an agreement or understanding amongst Defendants to violate Mr. Bruderer's rights, constitutional or otherwise. Nor has Mr. Bruderer alleged facts that colorably meet any of the RICO elements as set forth above. Accordingly, his civil conspiracy claims fail and should be dismissed with prejudice.

### C.  Civil Rights Act of 1866

42 U.S.C. § 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To establish a section 1981 claim, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant had the intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in section 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001). Importantly, section 1981 applies only to racial discrimination claims. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995) ("Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." (quotations, citations, and footnotes omitted)).

Here, Mr. Bruderer alleges neither his race in the complaint nor that any of the Defendants discriminated against him based on his race. Indeed, the complaint lacks any discrimination-based allegations. Because Mr. Bruderer alleges neither his race in the complaint nor that he was discriminated against on this basis, he fails to state a claim under section 1981. *See, e.g.*, *Shaffer v. Direct Med., Inc.*, No. CIV-10-774-D, 2012 WL 676388, at *1 (W.D. Okla. Feb. 28, 2012) (dismissing a section 1981 claim "as no racial discrimination is at issue"); *Kelly v. U.S. Dep't of Just.*, No. 03-4137-JAR, 2003 WL 22533562, at *2 (D. Kan. Oct. 31, 2003)

(finding that the plaintiff failed to state a claim under section 1981 where he failed to allege "his race or national origin" or "allege intentional discrimination resulting from racial animus, as § 1981 requires"). Accordingly, Mr. Bruderer's claims under the Civil Rights Act of 1866 fail and should be dismissed with prejudice.

IV. **Section 1983 Claims**

Mr. Bruderer's Fourth, Fifth, and Fourteenth Amendment claims are brought under 42 U.S.C. § 1983. Section 1983 imposes civil liability upon any person who, acting under color of state law, deprives another of their federally protected rights. Section 1983 does not confer any substantive rights, but merely serves as a vehicle for vindicating rights secured by the United States Constitution or federal statutes. *Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1980). To state a claim under section 1983, Mr. Bruderer must allege a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010). The court addresses Mr. Bruderer's section 1983 claims in the following order: (A) claims against state actors; (B) claims against Mayor Wood and Police Chief Carruth; (C) claims against the City of South Salt Lake; (D) claims under the Fifth Amendment; (E) claims under the Fourteenth Amendment; and (F) claims under the Fourth Amendment.

A. **State Actors**

The Eleventh Amendment bars actions against states and state entities in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). The claims against Mr. Davis and Mr. Garcia are brought against them as state employees acting in their official capacities for the Utah Department of Public Safety. Claims against state officials in their official

13

capacities are treated as suits against the state and are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Consequently, the claims against Mr. Davis and Mr. Garcia are barred by the Eleventh Amendment and must fail. For this reason, the claims against Mr. Davis and Mr. Garcia should be dismissed with prejudice on sovereign immunity grounds.[19]

### B. Mayor Wood and Police Chief Carruth[20]

In alleging a section 1983 action against a government agent in an individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Respondeat superior cannot form the basis of the liability. *Id.* In other words, liability in a section 1983 action is personal in nature and, therefore, to be liable, a defendant must have been personally involved in the wrongful conduct. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *Arocho v. Nafziger*, 367 F. App'x 942, 956 (10th Cir. 2010).

Mr. Bruderer does not make any specific allegation against Mayor Wood or Police Chief Carruth. They are mentioned by name only and lack any personal or actual involvement to any of

---

[19] Additionally, the claims against the state actors are frivolous. An action is "frivolous" for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an "indisputably meritless legal theory." *Neitzke v. Williams,* 490 U.S. 319, 325, 327 (1989). A complaint will be dismissed as "frivolous" when "it is clear that the defendants are immune from suit." *Id.* at 327; *see also Montero v. Travis*, 171 F.3d 757, 759-60 (2d Cir. 1999) (per curiam).

[20] Official capacity claims against a municipal official are duplicative when a municipality has already been named in a lawsuit. *Graham*, 473 U.S. at 165-66. The City of South Salt Lake is a named defendant in this suit, and the South Salt Lake Police Department is a governmental sub-unit thereof. *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (holding that governmental sub-units are not separable suable entities). Accordingly, to the extent Mayor Wood and Police Chief Carruth are named in their official capacities, such claims should be dismissed as duplicative of the claims against the City of South Salt Lake, which, as shown below, should also be dismissed.

the events alleged in the complaint. Accordingly, the claims against Mayor Wood and Police Chief Carruth should be dismissed with prejudice for lack of personal involvement.

### C. City of South Salt Lake

Municipalities and municipal entities are not liable under section 1983 solely because their employees inflict injury on a plaintiff. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). In order to establish liability, "a plaintiff must show that a policy or custom exists and that there is a direct causal link between the policy or custom and the injury alleged. [A plaintiff] cannot state a claim for relief against [a municipality] under § 1983 merely by pointing to isolated incidents." *West v. Colorado*, No. 10-cv-03130-BNB, 2011 WL 1134313, at *3 (D. Colo. Mar. 28, 2011) (citation omitted). Where a plaintiff "has failed to include any allegations that demonstrate a link between a policy or custom of the [municipality] and the injuries he alleges[,] . . . he cannot maintain a claim for relief against [the municipality]." *Id.* Where allegations are no more than a recitation of the elements, the claim is insufficient. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555, 557)).

In this case, Mr. Bruderer alleges no facts upon which to infer a direct causal link between the relevant Defendants' customs or policies and the Officers' alleged violations of his constitutional rights. Mr. Bruderer does not even identify a single policy in existence; he only speculates that a discriminatory one exists. Accordingly, the claims against the City of South Salt Lake should be dismissed with prejudice.

### D. Fifth Amendment

The Due Process Clause of the Fifth Amendment applies only to the federal government and federal officials. *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). "It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees." *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237 (M.D. Pa. 1995). The Fifth Amendment Due Process Clause is not applicable in this case because the defendants here are state, not federal, actors. Moreover, because section 1983 imposes liability only for actions taken under state law, there would be no Fifth Amendment claim under section 1983. *Koessel*, 717 F.3d at 748 n.2. Thus, Mr. Bruderer's Fifth Amendment due process claim should be dismissed with prejudice.

### E. Fourteenth Amendment

Mr. Bruderer alleges in a conclusory fashion that Defendants deprived him of his right to life, liberty, or property without due process of the law and his right to equal protection.[21] The court construes this reference as a substantive due process claim, as no other basis for a Fourteenth Amendment claim is apparent on the face of the complaint. To prevail on a substantive due process claim under section 1983, a plaintiff must establish, as a threshold matter, that he has a protected property interest or fundamental right to which the Fourteenth Amendment's due process protection applies. *Koessel*, 717 F.3d at 749.

Here, Mr. Bruderer has identified the fundamental right to be free from unreasonable searches and seizures, of which he was allegedly deprived by Defendants generally, and Officer Singleton and Officer Breeze more specifically. This claim, however, is duplicative of his Fourth

---

[21] ECF No. 3 at 19.

Amendment claims. Consequently, his substantive due process claim must be dismissed because it is barred by the "more-specific-provision rule." *County of Sacramento v. Lewis*, 523 U.S. 833, 834, 843 (1998) (stating that substantive due process analysis is inappropriate "if respondents' claim is 'covered by' the Fourth Amendment"). Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Accordingly, Mr. Bruderer's Fourteenth Amendment substantive due process claim is duplicative of his Fourth Amendment claims and should be dismissed with prejudice.

    **F.**    **Fourth Amendment**

Mr. Bruderer's claims alleging an unlawful seizure arise under the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment." *Camara v. Municipal Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967). "To establish a violation of the Fourth Amendment in a Section 1983 action, the claimant must demonstrate both that a seizure occurred and that the seizure was unreasonable." *Bradford v. Wiggins*, 516 F.3d 1189, 1196 (10th Cir. 2008) (quotations and citations omitted).

Mr. Bruderer's Fourth Amendment claims against Officer Singleton and Officer Breeze arising from the September 27, 2017 police encounter—and subsequent claims about the internal investigation and alleged deletion of the body-cam footage by Lieutenant McNaughton in

17

connection with the September 27, 2017 police encounter—do not appear subject to dismissal at this early stage. *See, e.g.*, *Chestnut v. Wallace*, 947 F.3d 1085, 1092 (8th Cir. 2020) (holding that a police officer's vague, conclusory statement to another officer that a jogger was "suspicious" was insufficiently specific to establish reasonable suspicion that he was involved in criminal activity to justify an investigatory stop); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) ("[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."). Mindful of the Tenth Circuit's instruction to liberally construe a pro se plaintiff's pleadings, *Kay*, 500 F.3d at 1217, the court recommends that Mr. Bruderer be permitted to pursue his Fourth Amendment claims against Defendants Officer Singleton, Officer Breeze, and Lieutenant McNaughton. Mr. Bruderer appears to plead sufficient facts that, when accepted as true, plead a plausible seizure and that the seizure was not reasonable. Of course, Defendants are free to assert defenses such as qualified immunity in subsequent litigation, but this court is not able to do so. Consequently, Mr. Bruderer's Fourth Amendment claim should proceed as to Officer Singleton, Officer Breeze, and Lieutenant McNaughton.[22]

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED:

1. This case proceed on Mr. Bruderer's Fourth Amendment claims against Officer Singleton, Officer Breeze, and Lieutenant McNaughton.

---

[22] The court expresses no opinion as to whether Mr. Bruderer's claims can withstand a properly filed motion to dismiss or motion for summary judgment.

2. All other claims asserted be DISMISSED WITH PREJUDICE.

3. All Defendants except for Officer Singleton, Officer Breeze, and Lieutenant McNaughton be TERMINATED as parties to this action.

4. The court issue service of process only for Officer Singleton, Officer Breeze, and Lieutenant McNaughton.

\* \* \* \* \*

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED July 26, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge